Williams et al. *v.* Wenger, Appellant.

74

Argued April 29, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Simon Pearl,* with him *Henry Arronson,* for appellant.

*Herbert P. Sundheim,* Special Deputy Attorney Gen-
eral, with him *Robert L. Myers, Jr.,* Deputy Attorney
General, and *Charles J. Margiotti,* Attorney General.

OPINION BY MR. JUSTICE KEPHART, May 27, 1935:

Receivers of the Mortgage Building and Loan Associa-
tion, successor to the Hoover Building and Loan Associa-
tion, appointed by the Federal District Court, brought
suit against Rebecca Wenger on a promissory note for

$3,500, loaned to her by the latter association October 16, 1929. Fifty shares of stock of the same association were pledged by her as collateral security.

The merger agreement whereby the Hoover Building and Loan Association, the Mortgage Building and Loan and other associations became one, thereafter known as the Mortgage Building and Loan Association, provided among other matters that the shares of the capital stock of the merged association, when exchanged in substitution for the shares of the constituent companies, could not be withdrawn for a period of twenty-four months from the date of the approval of the merger agreement by the secretary of the Commonwealth. This agreement was submitted for approval of the stockholders of each of the constitutent companies at a meeting held for that purpose on March 30, 1931. Rebecca Wenger did not attend this meeting in person, but gave a proxy to vote her stock at that meeting, granting to her proxy "full power and authority to act for [her] and . . . to vote upon the adoption or rejection of a joint agreement of merger . . . and the transaction of all such other business as may come before the said meeting, as fully and effectively as [she] could do if personally present. . . ." Her proxy attended the meeting and voted in favor of the merger agreement.

In 1932 when the merged association was admittedly solvent, appellant wrote to the Mortgage Building and Loan Association asking for the blanks necessary to be filled out for the purpose of withdrawal of her stock, and stating that she wished "to withdraw from the Hoover Building and Loan Association and receive all moneys due [her]." No further notice or action was taken by her, nor was any demand made for an appropriation of the value of her stock to the payment of her note; the letters thereafter from her attorney stating her intention "to make arrangements whereby the stock can be credited on account of the loan," were not considered as a direction to appropriate. Her request for withdrawal was not

acted on by the association, although it was endorsed by the secretary's clerk "Withdrawal" on January 27, 1932. At that time her shares were valued at $7,303, her note with interest and dues amounted to $3,635, leaving a balance in her favor of $3,668.

On February 4, 1935, the receivers appointed by the Federal Court were ousted by the Supreme Court of the United States (Pa. v. Williams, 293 U. S. 547), and directed to turn over all assets and property of the Mortgage Building and Loan Association to the secretary of banking, who was substituted as plaintiff in this action. The court below directed a verdict in favor of the appellee herein for the amount of the note with interest and subsequently overruled appellant's motions for a new trial and for judgment n. o. v.

The appellant contends that the proxy given by her did not authorize the holder to vote in favor of a merger agreement with a clause limiting the right of withdrawal from the merged company; that any limitation contained in the merger agreement on the right to withdraw was contrary to applicable statutes and against public policy and that the provisions of such statutes cannot be waived; that, even if the limitation on withdrawals is valid, there was no restriction on her right to appropriate the value of her stock to payment of her loan, and her withdrawal notice should be treated as a request for such appropriation, which right of appropriation was not affected by subsequent insolvency of the association.

The first contention is without merit. There was no limitation on the powers of her proxy, the relevant provisions of which are quoted above. She cannot now, when the rights of third parties are materially changed, attempt to limit or restrict the general power given and confine it, contrary to its plain language, to a mere power to adopt or reject those particular provisions of the merger agreement which deal simply with the mechanical details of the merger. Moreover she continued to pay her dues and interest on her loan to the merged association

without objecting to any provision in the merger agreement.

It is urged that the agreement restricting the rights of withdrawal for a period of twenty-four months is in violation of the Act of April 29, 1874, P. L. 73, section 37, which provides that any stockholder in a building and loan association shall have power to withdraw from the association. The precise question is whether shareholders may waive for a limited time the right given by this statute. Appellant contends the statute contains a declaration of public policy and is such that the persons for whom the benefit was created cannot waive it by voluntary act or otherwise. See Bosler v. Rheem, 72 Pa. 54; Firmstone v. Mack, 49 Pa. 387. Whether the act in question contains a declaration of public policy or sets up a contractual right in the shareholder need not be discussed. Every statute based upon public policy does not impose on the person benefited an unalterable status as to the benefit conferred or the rights protected which cannot be modified, changed or waived by acts or agreements of the parties. The right therein granted is not so important as to command the general interest of the body politic as a whole and is of interest to but a class thereof. "Statutes grounded on public policy are those which forbid acts having a tendency to be injurious to the public good. The prime question is whether the thing forbidden is inimical to the public interest. Where public policy requires the observance of a statute, it cannot be waived by an individual or denied effect by the courts since the integrity of the rule expressed by the legislature is necessary for the common welfare. However, acts of assembly are not always based on the theory that the subject-matter legislated on is based on public policy or general public good in the sense that these terms are understood. . . . Where the provisions of an act are regulative or law is made for the protection of a given class, it cannot always be said to be an act grounded on public policy as that term is understood":

McCurdy's Est., 303 Pa. 453, 461. Examples of statutes passed for the protection of individuals or classes of individuals not intimately bound up with the common welfare and which may, therefore, be waived by the parties are numerous. The statutes of limitations (Smith v. P. R. R., 304 Pa. 294), others providing for exemption from execution (Bowman v. Smiley, 31 Pa. 225; Case v. Dunmore, 23 Pa. 93), for inquisition and condemnation (Levy v. Spitz, 297 Pa. 136), for widow's exemption (Haendler's Est., 81 Pa. Superior Ct. 168), or for the right of appeal (Curry v. Bacharach Quality Shops, Inc., 271 Pa. 364; Consumers Mining Co. v. Chatak, 92 Pa. Superior Ct. 17), are in this class.

The power of a shareholder to withdraw from a building and loan association is rather a privilege than a right. It was not until the Act of April 12, 1859, P. L. 544, that any right of withdrawal was provided for in the statutes of this State. This right was later carried over to the Act of April 29, 1874, supra, and now appears in the Building and Loan Code of May 5, 1933, P. L. 457, section 612; see Judge KELLER's opinion in Morris Resnick B. & L. Assn. v. Barnes, 108 Pa. Superior Ct. 218, 221-2, for a review of legislation and authorities thereunder. While it is true that by-laws of a building and loan association which contravene the statutory law must give way to the applicable statutes (see Frisby v. Armenian-American B. & L. Assn., 107 Pa. Superior Ct. 313; Shapiro v. Mortgage B. & L. Assn., 104 Pa. Superior Ct. 65; Marshall v. Pa. Savings B. & L. Assn., 115 Pa. Superior Ct. 296), here the shareholder did not permanently contract away his right of withdrawal, and whether that would be permissible need not be decided. Section 37 of the Act of 1874, supra, does not establish a policy so necessary to the general welfare that the privileges or rights therein granted could not be suspended by the voluntary act of a shareholder for a reasonable period, as was done in this instance.

Appellant was a borrowing member and such members are expressly excluded from the withdrawal feature con-

ferred by section 37 of Act of 1874, supra. She could, however, if the association were solvent, appropriate the value of her stock to the indebtedness, receiving the excess, if any; in this way she could accomplish the same result without paying her note and then withdrawing: Act of April 10, 1879, P. L. 16, section 4, as amended by the Act of April 30, 1929, P. L. 901; Orient B. & L. Assn. v. Freud, 298 Pa. 431, 436; Early & Lane's App., 89 Pa. 411; Podol B. & L. Assn. v. Polak, 102 Pa. Superior Ct. 36; Morris Resnick B. & L. Assn. v. Barnes, supra. This, the appellant contends, was the true effect of her withdrawal notice (see Savitz B. & L. Assn. v. Lissman, 101 Pa. Superior Ct. 501). Appellant gave no express direction to so apply her stock, but relies on her notice of withdrawal as implying a request to pay off her note and credit her with the difference in the value of her shares. But if her withdrawal by implication included an appropriation, then the provision in the merger agreement prohibiting withdrawals equally, by implication, prohibited appropriations; and if the withdrawal did not include an appropriation, she has never requested that the shares be applied to the payment of her debt. The appropriation of the value of the shares of a borrowing member to the payment of the loan is as much a withdrawal of the shares as the ordinary form of withdrawal in the case of a nonborrower. The Act of April 10, 1879, supra, and the cases above cited merely eliminated the requirement that the borrower first pay his debt and then receive the withdrawal value of his share. An appropriation is a form of withdrawal and is within the merger agreement assented to by the appellant herein; if this were not so, the effect would be to place the entire burden resulting from the suspension of withdrawals upon nonborrowing members and thus place those indebted to the association in a preferred position. In view of the later insolvency of the association, she will not be allowed to take advantage of any preference obtained through an appropriation on the books of the association to the serious detriment of the re-

maining members.　See Sullivan Mfg. Co. v. Ideal B. & L. Assn., 313 Pa. 407; Crawford v. New Sparton B. & L. Assn., 112 Pa. Superior Ct. 113, 117.

Judgment affirmed.